**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

MAY - 1 2025 11: 05 A

U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-COLUMBUS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.** |
|  | **JUDGE** |
| **v.** | **INDICTMENT** |
| **AMOS A. BARRETT** | 18 U.S.C. § 1956(h) |
|  | 18 U.S.C. § 1956(a)(1)(B)(i) |
|  | 18 U.S.C. § 1957 |
|  | 18 U.S.C. § 1349 |
|  | 18 U.S.C. § 1343 |
|  | **FORFEITURE ALLEGATIONS** |

**THE GRAND JURY CHARGES:**

All dates and times in this Indictment are alleged to be "on or about," "in and around," or "through and including" the specific dates stated.

**Background**

At all times relevant to this Indictment:

1.     Defendant **AMOS A. BARRETT ("BARRETT")** was a resident of the Southern District of Ohio.

2.     The Coronavirus Aid, Relief and Economic Security Act ("CARES Act") was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act expanded the Economic Injury Disaster Loan ("EIDL") Program and created the Pandemic Unemployment Assistance ("PUA") program.

3.     The EIDL Program provided for loan assistance for small businesses. Businesses were permitted to use EIDL proceeds to pay fixed debts, payroll, accounts payable and other

bills that could have been paid had the disaster not occurred. Businesses applied for loans under the EIDL Program directly through an online portal maintained by the Small Business Administration ("SBA"). Once loans were approved, the U.S. Treasury directly issued EIDL funds. The EIDL application also required a loan applicant to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain an EIDL loan.

4.     The PUA program was a program administered by the U.S. Department of Labor and the state workforce agencies. The PUA program expanded States' ability to provide unemployment assistance to many workers affected by COVID-19, including for workers who were not ordinarily eligible for unemployment insurance ("UI") benefits.

## COUNT 1
## Conspiracy to Commit Money Laundering

5.     Paragraphs 1 through 4 are incorporated here.

6.     From June 12, 2020, through July 29, 2020, in the Southern District of Ohio and elsewhere, **BARRETT** knowingly combined, conspired, and agreed with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of 18 U.S.C. §§ 1956 and 1957—namely:

a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity—namely, wire fraud and identity fraud—knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

2

b. to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity—namely, wire fraud and identity fraud—in violation of 18 U.S.C. § 1957.

7. The object of the conspiracy was to launder the proceeds of a wire fraud and identity fraud scheme to obtain money fraudulently from government programs designed to respond to the COVID-19 pandemic, including the EIDL program.

### Manner and Means of the Conspiracy

8. It was part of the conspiracy that **BARRETT** and other members of the conspiracy would launder the proceeds of EIDL fraud. The perpetrators of the EIDL fraud obtained the personally identifiable information of other people and information of businesses. The perpetrators of the EIDL fraud then knowingly used that information without lawful authority to submit online applications to deprive the EIDL program of money or property by means of material misrepresentations and concealment of material facts. The online applications caused wire communications in interstate and foreign commerce. The perpetrators provided bank-account information where the EIDL funds should be sent. These accounts were controlled by **BARRETT**.

9. It was further part of the conspiracy that **BARRETT** established and used companies for the purpose of laundering criminal proceeds, including One World Energy Solution LLC and C&E Farms LLC DBA One World Energy Solution LLC.

10. It was further part of the conspiracy that **BARRETT** opened and used bank accounts in his control to launder criminal proceeds. The accounts included a Key Bank account with an account number ending in x7433 ("Key x7433"), a PNC Bank account with an account

3

number ending in x3382 ("PNC x3382"), a US Bank account with an account number ending in x4897 ("USB x4897"), and a Schwab account with account number ending x3781 ("Schwab x3781").

11.    It was further part of the conspiracy that **BARRETT** received proceeds from EIDL fraud into the above-described bank accounts.

12.    It was further part of the conspiracy that **BARRETT** conducted financial transactions which were designed, in whole and in part, to conceal the nature, location, source, ownership, and control of the fraud proceeds. Several of these transactions were also in excess of $10,000.

**In violation of 18 U.S.C. § 1956(h).**

**COUNTS 2–20**
**Concealment Money Laundering**

13.　　Paragraphs 1 through 12 are incorporated here.

14.　　On each of the dates listed below for each count, in the Southern District of Ohio and elsewhere, **BARRETT** knowingly conducted and attempted to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity—that is, wire fraud and identity fraud—knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that, while conducting and attempting to conduct such financial transactions, **BARRETT** knew that the property involved in the transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Financial Transaction |
|---|---|---|
| 2 | June 12, 2020 | Sending a $4,000 transfer from Key x7433 via Cash App |
| 3 | June 16, 2020 | Withdrawing $2,500 in cash from Key x7433 |
| 4 | June 17, 2020 | Withdrawing $18,500.41 via check from Key x7433 |
| 5 | June 26, 2020 | Sending a $5,000 ACH transfer from Key x7433 to Schwab x3781 |
| 6 | June 29, 2020 | Sending a $9,000 ACH transfer from Key x7433 to Schwab x3781 |
| 7 | June 30, 2020 | Sending a $19,500 ACH transfer from Key x7433 to Schwab x3781 (first transaction on Key x7433 statement) |
| 8 | June 30, 2020 | Sending a $19,500 ACH transfer from Key x7433 to Schwab x3781 (second transaction on Key x7433 statement) |
| 9 | July 5, 2020 | Sending a $3,000 transfer from PNC x3382 via Cash App |
| 10 | July 7, 2020 | Sending a $1,600 transfer from PNC x3382 via Cash App |
| 11 | July 8, 2020 | Withdrawing $68,000 via check from PNC x3382 |
| 12 | July 8, 2020 | Withdrawing $800 in cash from PNC x3382 |
| 13 | July 9, 2020 | Withdrawing $800 in cash from PNC x3382 |
| 14 | July 10, 2020 | Withdrawing $800 in cash from PNC x3382 |
| 15 | July 13, 2020 | Sending a $1,000 transfer from USB x4897 via Zelle |
| 16 | July 16, 2020 | Sending a $3,400 transfer from USB x4897 via Cash App |
| 17 | July 24, 2020 | Withdrawing $38,000 via check from USB x4897 |
| 18 | July 27, 2020 | Sending a $2,200 transfer from USB x4897 via Cash App |
| 19 | July 28, 2020 | Withdrawing $14,000 via check from USB x4897 |
| 20 | July 29, 2020 | Withdrawing $4,000 via check from USB x4897 |

**All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).**

5

**COUNTS 21–26**
**Monetary Transaction Money Laundering**

15.     Paragraphs 1 through 12 are incorporated here.

16.     On or about the dates set forth below, in the Southern District of Ohio and

elsewhere, **BARRETT** did knowingly engage and attempt to engage in the following monetary

transactions by, through, and to a financial institution, affecting interstate and foreign commerce,

in criminally derived property of a value greater than $10,000, such property having been

derived from a specified unlawful activity—that is, wire fraud and identity fraud:

| Count | Date | Monetary Transaction |
|---|---|---|
| 21 | June 17, 2020 | Withdrawing $18,500.41 via check from Key x7433 |
| 22 | June 30, 2020 | Sending a $19,500 ACH transfer from Key x7433 to Schwab x3781 (first transaction on Key x7433 statement) |
| 23 | June 30, 2020 | Sending a $19,500 ACH transfer from Key x7433 to Schwab x3781 (second transaction on Key x7433 statement) |
| 24 | July 8, 2020 | Withdrawing $68,000 via check from PNC x3382 |
| 25 | July 24, 2020 | Withdrawing $38,000 via check from USB x4897 |
| 26 | July 28, 2020 | Withdrawing $14,000 via check from USB x4897 |

**All in violation of 18 U.S.C. § 1957.**

**COUNT 27**
**Conspiracy to Commit Wire Fraud**

17.     Paragraphs 1 through 4 are incorporated here.

18.     From May 14, 2020, through October 19, 2020, in the Southern District of Ohio

and elsewhere, **BARRETT** knowingly combined, conspired, and agreed with other persons

known and unknown to the Grand Jury to commit offenses against the United States in violation

of 18 U.S.C. § 1343—namely, to knowingly devise and intend to devise a scheme and artifice to

defraud and to deprive another of money and property by means of materially false and

fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme

and artifice to defraud and attempting to do so, to transmit and cause to be transmitted, by means

of wire communication in interstate and foreign commerce, writings, signs, signals, and pictures.

6

19.     The object of the conspiracy was to fraudulently obtain money from government programs, including UI programs of several States.

**Manner and Means of the Conspiracy**

20.     It was part of the conspiracy that **BARRETT** submitted and assisted in the submission of fraudulent UI applications and certifications in his name and in the name of other people, including individuals who were not aware that applications and certifications were being submitted in their names and who did not authorize **BARRETT** to submit applications and certifications using their information. These applications and certifications were submitted to the state workforce agencies of several States, including Ohio, Arizona, California, Massachusetts, Michigan, and Oklahoma, which were the agencies responsible for the UI program in their respective States. As to each set of applications and certifications relevant to this Indictment, **BARRETT** included and aided and abetted the inclusion of materially false pretenses, representations, and promises calculated to obtain UI benefits unlawfully. The electronic applications caused wire communications in interstate and foreign commerce.

21.     It was further part of the conspiracy that **BARRETT** caused others to transfer funds by means of wire communication in interstate and foreign commerce to bank accounts in his control.

22.     It was further part of the conspiracy that **BARRETT** caused others to mail matters, including debit cards funded with the proceeds of UI fraud, to addresses in his control.

23.     It was further part of the conspiracy that **BARRETT** possessed and used debit cards funded with the proceeds of UI fraud.

**In violation of 18 U.S.C. § 1349.**

7

## COUNTS 28–42
### Wire Fraud

24.     Paragraphs 1 through 4 and paragraphs 17 through 23 are incorporated here.

25.     From May 14, 2020, through October 19, 2020, in the Southern District of Ohio and elsewhere, **BARRETT** devised and intended to devise a scheme to defraud, and to deprive another of money and property by means of materially false and fraudulent pretenses, representations, and promises.

26.     On each of the dates listed below for each count, in the Southern District of Ohio and elsewhere, **BARRETT,** for the purpose of executing and attempting to execute the scheme to defraud described above, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, signals and sounds, as described for each count as follows:

| Count | Date | Description |
|---|---|---|
| 28 | 05/14/2020 | Submission of UI application to Massachusetts workforce agency in the name of C.C. |
| 29 | 05/19/2020 | Submission of UI application to Michigan workforce agency in the name of J.F. |
| 30 | 05/19/2020 | Submission of UI application to Michigan workforce agency in the name of S.O. |
| 31 | 05/19/2020 | Submission of UI application to Michigan workforce agency in the name of J.W. |
| 32 | 08/22/2020 | Submission of UI application to California workforce agency in the name of I.S. |
| 33 | 08/22/2020 | Submission of UI application to California workforce agency in the name of J.B. |
| 34 | 08/24/2020 | Submission of UI application to California workforce agency in the name of A.A. |
| 35 | 08/24/2020 | Submission of UI application to California workforce agency in the name of T.V. |
| 36 | 08/25/2020 | Submission of UI application to California workforce agency in the name of A.S. |
| 37 | 08/25/2020 | Submission of UI application to California workforce agency in the name of L.W. |

8

| 38 | 08/28/2020 | Submission of UI application to California workforce agency in the name of D.T. |
| 39 | 08/28/2020 | Submission of UI application to California workforce agency in the name of P.M. |
| 40 | 10/14/2020 | Submission of UI application to California workforce agency in the name of **BARRETT** |
| 41 | 10/19/2020 | Submission of UI application to California workforce agency in the name of S.B. |
| 42 | 10/19/2020 | Submission of UI application to California workforce agency in the name of T.D. |

**All in violation of 18 U.S.C. § 1343.**

## FORFEITURE ALLEGATION A

27. Paragraphs 1 through 16 are incorporated here.

28. Upon conviction of any of violations of 18 U.S.C. § 1956 or 18 U.S.C. § 1957 of this Indictment, **BARRETT** shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such violations as alleged, or any property traceable to such property.

29. If any of the above-described forfeitable property, as a result of any act or omission of **BARRETT**, cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of **BARRETT** up to the value of the forfeitable property described above.

**Forfeiture in accordance with 18 U.S.C. § 982(a)(1) and Rule 32.2 of the Federal Rules of Criminal Procedure.**

9

## FORFEITURE ALLEGATION B

30.     Paragraphs 1 through 4 and paragraphs 17 through 26 are incorporated here.

31.     Upon conviction of any of violations of 18 U.S.C. § 1349 or 18 U.S.C. § 1343 alleged in this Indictment, **BARRETT** shall forfeit to the United States, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real or personal, constituting or derived from proceeds traceable to such violation.

32.     If any of the above-described forfeitable property, as a result of any act or omission of **BARRETT**, cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, in accordance with 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of **BARRETT**, up to the value of the forfeitable property described above.

**Forfeiture in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

**A TRUE BILL**

*s/Foreperson*

_____
**FOREPERSON**

**KELLY A. NORRIS**
**Acting United States Attorney**

_____
**PETER K. GLENN-APPLEGATE (0088708)**
**Assistant United States Attorney**

10